HOLAK, Respondent, vs. SOUTHARD, Appellant.

*December 14, 1923—January 15, 1924.*

*Chattel mortgages: Failure to record: Notice: Effect: Bill of sale intended as chattel mortgage.*

1. An unrecorded chattel mortgage, though in the form of a bill of sale, has no validity as against a subsequent purchaser or mortgagee, even though he has actual notice of the unrecorded mortgage.  p. 497.
2. In an action to recover possession of personal property or its value, the evidence is *held* conclusively to establish that a bill of sale was intended to be, and was in fact, a chattel mortgage to secure a loan.  p. 497.

APPEAL from a judgment of the circuit court for Sauk county: E. W. CROSBY, Judge.  *Reversed.*

Replevin.  In the month of December, 1920, one Ellsworth Thomas lived on a rented farm belonging to one Bessey, in Vernon county.  Thomas was owing Bessey and Bessey was pressing for payment.  Plaintiff advanced Thomas money for the purpose of paying Bessey.  They went to the Farmers State Bank at Hillsboro for the purpose of having a chattel mortgage drawn covering certain personal property to secure the plaintiff for the money advanced.  They talked to the cashier, and he advised a bill of sale instead of a chattel mortgage.  A bill of sale was prepared covering certain live stock, one drag, and one wagon truck.  The bill of sale was never filed with the town clerk.  The plaintiff

never took possession of the property. A short time there-
after Thomas moved onto the farm of defendant in Sauk
county, taking all of said live stock with him. He became
indebted to the defendant, and on the 14th day of March,
1921, executed to him a chattel mortgage upon the property,
or a portion thereof, described in the bill of sale to the plaint-
iff. During the summer he incurred further indebtedness to
the defendant, and in the fall turned over to him a consider-
able portion of the property described in plaintiff's bill of
sale. Plaintiff brought this action to recover the possession
of said personal property or the value thereof. The case was
tried before the court and a jury and, upon the special ver-
dict of the jury, the court rendered judgment in favor of
the plaintiff. From that judgment the defendant appealed.

*V. H. Cady* of Baraboo, for the appellant.

For the respondent there was a brief by *Evenson & Fitz-
patrick* of Baraboo, and oral argument by *W. G. Evenson.*.

OWEN, J. Appellant assigns numerous errors occurring
during the trial and in the submission of the case to the
jury, which it is not necessary to consider. An examination
of the record leaves little doubt that the bill of sale executed
by Thomas to the plaintiff upon which she relies to prove
her title to the property was intended merely as security for
a loan and not as an absolute transfer of title to the property
therein described. As to this, the testimony of the cashier
of the bank is very significant. He testified:

"The conversation at the time the bill of sale was drawn
was: There had been several loans made from time to time
to Mr. Thomas, and they were making some settlement with
Bessey, and they talked chattel mortgage, and I advised a
bill of sale, as the property that Mr. Thomas was holding
really belonged to and was paid for by *Mrs. Holak,* and
Thomas advised me he would do anything that was satis-
factory, and I said you had better give a bill of sale, and
he said all right, and I said to him, you understand you are
giving a bill of sale and he said yes, and that is practically
all I had to do with the case."

This clearly indicates that the parties, prior to their appearance at the bank, regarded the transaction as a loan, which was to be secured by a chattel mortgage upon the property, rather than a purchase of the property described in the bill of sale. The bill of sale resulted because the cashier of the bank advised it in preference to a chattel mortgage. There is nothing to indicate that the original transaction between the parties had been transformed from that of a loan to a purchase of the personal property. The fact that the personal property remained in the possession of Thomas, and that he took it with him when he moved onto the defendant's farm in another county, is hardly consistent with the idea that the parties considered the property described in the bill of sale as the property of plaintiff. In the testimony of the plaintiff and her husband the transaction is continually referred to as a loan. The husband of plaintiff testified:

"After Thomas had taken these cattle to Baraboo I had a conversation with him. Thomas said he was going to make 100 gallons of moonshine, and not sell a gallon until it was all made and then he was going to pay up everything, he would give me $60 apiece all them cattle."

The plaintiff testified:

"I loaned or advanced Thomas $545 and my husband gave him the balance of $45. I took a bill of sale, Exhibit B, the Monday after Christmas. Q. What was your reason for getting this? A. (B., interpreter) She said she loaned him some money and took that as security." "The purpose of taking this instrument, Exhibit B, was to secure the payment of this $547.50 that I claim Thomas was owing my husband, and I was loaning Thomas this money to pay the Bessey mortgage. Thomas was loaned this money and gave the bill of sale as security for the payment of the loan. I expected Thomas would pay what he borrowed under Exhibit B from time to time, and I loaned him the money on the strength of his credit, that I thought he would pay. Thomas told me that if I would loan him this money to

pay off the Bessey mortgage he (Thomas) would pay the old debts that he owed me and my husband, and that he gave the bill of sale, Exhibit B, as security for the payment of such loans. Thomas told me if I would loan him the money to pay off the Bessey mortgage he (Thomas) would sell some cattle and some hay and secure the rest."

It seems to us that this as well as other evidence that might be quoted from the record conclusively establishes that the bill of sale was given not for the purpose of transferring title to the property described therein to the plaintiff but for the purpose of securing a loan, and that the bill of sale was intended to be and was in fact a chattel mortgage.

There was testimony tending to show that the defendant, before taking possession of the property described in the bill of sale, had been informed by third parties that the plaintiff owned the property. Whatever the effect of such information as notice to the defendant if the instrument were in fact a bill of sale, it is settled in this state that unrecorded chattel mortgages have no validity as against subsequent purchasers or mortgagees, even though they have actual notice of them. *First Nat. Bank v. Biederman,* 149 Wis. 8, 134 N. W. 1132, and cases there cited. Since the document which is in form a bill of sale but in fact a chattel mortgage was not filed or recorded as required by law, it had no validity as against the defendant and he took the personal property unaffected by any right, title, or interest accruing to the plaintiff by virtue thereof. It follows that in no view of the evidence can the plaintiff recover. The judgment must be reversed, and the cause remanded with instructions to dismiss the plaintiff's complaint.

*By the Court.*—So ordered.