United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 8, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-10494

_____

In Re:  STONEBRIDGE TECHNOLOGIES, INC.,

Debtor.

----------------------

EOP-COLONNADE OF DALLAS LIMITED PARTNERSHIP,

Appellant,

versus

DENNIS FAULKNER, In his capacity as Trustee of the SBTI Liquidating
Trust,

Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas, Dallas Division
USDC Nos. 3:03-CV-1979-P and 3:03-CV-1980-P

_____

Before KING, Chief Judge, and JOLLY and DENNIS, Circuit Judges.

PER CURIAM:

The trustee (the "Trustee") of the liquidating trust established under the confirmed Chapter 11 plan of Stonebridge Technologies, Inc. ("Stonebridge") brought an adversary action, as lessee (the "Lessee"), against EOP-Colonnade of Dallas Limited Partnership ("EOP" or the "Lessor"), the lessor, in connection with EOP's draw on a letter of credit that was provided as security for Stonebridge's commercial lease obligations with EOP.  The Trustee asserted, in the bankruptcy court, that EOP breached the lease and

made negligent misrepresentations to the issuing bank by prematurely drawing on the letter of credit and retaining an amount in excess of the claim cap of 11 U.S.C. § 502(b)(6). The bankruptcy court found that EOP did breach the lease and made negligent misrepresentations by prematurely drawing on the letter of credit and retaining an amount in excess of the § 502(b)(6) cap. The district court affirmed the bankruptcy court's order, and EOP now appeals. We REVERSE. Because EOP did not file a claim in the bankruptcy case, we hold that the § 502(b)(6) cap was not triggered. Further, we hold that EOP did not prematurely draw on the letter of credit. EOP, therefore, did not breach the lease or make negligent misrepresentations to the issuing bank.

I

On September 21, 2000, EOP and Stonebridge entered into a lease ("Lease"), in which Stonebridge agreed to lease space in an EOP-owned office building. Under the terms of the Lease, Stonebridge was required to provide a security deposit to EOP, defined as "$105,298.85 in cash and a letter of credit in the amount of $1,430,065.74."

Stonebridge provided EOP with a cash payment of $105,298.85 and an irrevocable stand-by letter of credit for $1,430,065.74 ("Letter of Credit") issued by the Bank of Oklahoma ("Bank") in favor of EOP. Stonebridge executed a note payable to the Bank, secured by a certificate of deposit for $1,250,000, to reimburse the Bank in the event of a draw on the Letter of Credit.

2

On September 6, 2001, Stonebridge filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code. At the time of the filing, Stonebridge owed EOP $71,895.61 for miscellaneous charges and expenses plus rent for September 2001. After filing the bankruptcy petition, Stonebridge paid EOP $50,000 to be applied against September 2001 post-petition rent. Stonebridge also initiated negotiations with EOP to reduce its lease obligations, seeking an agreement to reject the Lease as soon as possible and enter into a new short-term lease.

On October 23, EOP and Stonebridge announced an agreement in open court that the Lease would be rejected effective no earlier than October 1, 2001 and no later than October 23, 2001. It became clear at this time that the parties intended the effective rejection date to occur within that window of time, regardless of when the bankruptcy court issued its final order approving the rejection.

Prior to the October 23 court appearance, EOP initiated a draw request on October 22 to the Bank under the Letter of Credit for the full amount of the Letter of Credit. The Bank received the draw request on October 23, but refused to honor it because the request was technically deficient. Three days later, after correcting the deficiencies, EOP delivered another draw request to the Bank. The Bank received and promptly processed the second draw request, which became effective as of October 25. The Bank honored

3

the Letter of Credit on October 30 by issuing a check for $1,430,965.74 and delivering it to EOP.

On November 8, the bankruptcy court entered a <u>nunc</u> <u>pro</u> <u>tunc</u> order approving the rejection of the Lease, rendering the rejection effective as of October 1, 2001. As part of the agreement to reject the Lease, EOP was allowed an administrative post-petition rent claim in the amount of $42,137.50, and the parties agreed that pre-petition rent due from September 1 to September 5 was $17,549.81. The record conclusively demonstrates, however, that EOP never filed a proof of claim for its actual lease rejection damages following the bankruptcy court order rejecting the lease and approving EOP's administrative rent claim.

On December 12, the Bank sought relief from the automatic stay to apply Stonebridge's certificate of deposit as reimbursement for EOP's draw on the Letter of Credit. The Trustee reached a compromise with the Bank, allowing the certificate of deposit to be applied in exchange for an assignment of the Bank's claims against EOP for the allegedly improper draw upon the Letter of Credit. The Trustee then brought this adversary action in the bankruptcy court alleging that EOP breached the Lease and, as assignee, alleging that EOP made negligent misrepresentations to the Bank, by prematurely drawing on the letter of credit and retaining an amount in excess of the § 502(b)(6) cap.

The bankruptcy court held that EOP prematurely drew on the Letter of Credit and retained an amount in excess of the §

4

502(b)(6) cap, resulting in a breach of the Lease and negligent misrepresentations to the Bank that the funds were "due and owing." In re Stonebridge Technologies, 291 B.R. 63 (Bankr. N.D. Tex. Apr. 4, 2003). In ruling in favor of the Trustee, the bankruptcy court reasoned that because the Letter of Credit was part of the security deposit, it was subject to the § 502(b)(6) cap. The bankruptcy court also found that EOP's draw of the full amount of the Letter of Credit before the entry of the nunc pro tunc Lease rejection order was a breach of the Lease and constituted a negligent misrepresentation to the Bank that the full sum of the Letter of Credit was "due and owing." The bankruptcy court awarded to the estate: (i) damages in the amount of $180,065.74 for EOP's negligent misrepresentation to the Bank, calculated by the difference between the amount EOP drew on the Letter of Credit and the amount the Bank received from the certificate of deposit securing its obligations against the Stonebridge estate; and (ii) damages in the amount of $2,267.23 for EOP's breach of the Lease, calculated by the difference between what EOP would have been entitled to claim under 11 U.S.C. § 502(b)(6) (less a cash security deposit) and the amount the Bank collected on the certificate of deposit. EOP appealed to the district court, and the district court affirmed the bankruptcy court's ruling on January 30, 2004. EOP now appeals.

II

A

5

We apply the same standard of review as the district court: the bankruptcy court's conclusions of law and mixed questions of law and fact are reviewed de novo.  AT&T Universal Card Servs. v. Mercer (In re Mercer), 246 F.3d 391, 402 (5th Cir. 2001) (en banc). Findings of fact are reviewed for clear error.  Id.

B

We must begin our consideration of this case by examining the jurisdiction of the bankruptcy court (and by extension the jurisdiction of the district court and this court).  Neither party has raised jurisdictional issues,[1] but we are obligated to raise the matter sua sponte, certainly when jurisdiction appears questionable.  See In re Bass, 171 F.3d 1016, 1021 (5th Cir. 1999).

This appeal considers four claims brought by the Trustee against EOP in an adversary proceeding arising from Stonebridge's bankruptcy.  Two claims directly relate to damage allegedly done directly to the estate by EOP's actions:  (1) breach of the Lease by prematurely drawing on the Letter of Credit and (2) breach of the Lease by retaining an amount in excess of the § 502(b)(6) cap. The other two claims were assigned to the Trustee by the Bank:  (3) negligent misrepresentation to the Bank that sums were "due and owing" by prematurely drawing on the Letter of Credit and (4)

---

[1] Neither party has previously raised the question of general bankruptcy jurisdiction.  EOP, however, has raised the question of core versus non-core bankruptcy jurisdiction before both the bankruptcy and district courts.

6

negligent misrepresentation to the Bank that sums were "due and owing" by drawing proceeds in excess of the § 502(b)(6) cap.

District courts have jurisdiction over bankruptcy cases, and they may refer cases at their discretion to bankruptcy courts. 28 U.S.C. § 1334 (district court jurisdiction); 28 U.S.C. § 157 (bankruptcy court jurisdiction). The jurisdictional grant to the bankruptcy court is divided into "core" and "non-core" proceedings. Core proceedings arise under title 11 or arise in a case under title 11. 28 U.S.C. § 157(b). Non-core proceedings are those proceedings that are otherwise related to a case under title 11. 28 U.S.C. § 157(c)(1). Bankruptcy judges may enter all appropriate orders and judgments in core proceedings, but unless the parties consent to core treatment, a bankruptcy judge must submit proposed findings of fact and conclusions of law in non-core proceedings to the district court. 28 U.S.C. § 157(b)-(c).

To determine whether a particular matter falls within general bankruptcy jurisdiction, we ask whether the outcome of that proceeding could have any conceivable effect on the estate being administered in bankruptcy. Wood v. Wood (In re Wood), 825 F.2d 90, 93 (5th Cir. 1987). More specifically, an action is related to bankruptcy if "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." In re Majestic Energy Corp., 835 F.2d 87, 90 (5th Cir. 1988) (quoting Pacor Inc. v.

7

<u>Higgins</u>, 743 F.2d 984, 994 (3d Cir. 1984)). This inquiry is straightforward with respect to the breach of the Lease claims: The Lease is property of the bankruptcy estate in this case and, therefore, any breach of the Lease has an effect on the estate. Any recovery on the claims brought by the bankrupt for breach of the Lease goes directly to the estate for damage done to the estate.

With respect to the claims for negligent misrepresentations that EOP made to the Bank, jurisdiction is less obvious. Although the claims are now owned by the estate by virtue of the assignment to the Trustee, they arise from litigation rights of a third party, the Bank. At first glance, one might conclude that because the estate stands in the shoes of the Bank, and the bankruptcy court had no jurisdiction to litigate the Bank's claim against EOP, the bankruptcy court could not assert jurisdiction over the claim just because the Bank's cause of action had been assigned to the estate.[2] Finding that assignment alone creates bankruptcy jurisdiction to litigate a third party's cause of action defeats the limited scope of bankruptcy jurisdiction. Upon closer review, however, additional effects on the estate are evident: a claim by the Bank against EOP affects the need for the Bank to seek

_____

[2] At oral argument before this court, counsel for the Trustee admitted that the assigned claims would not be within the bankruptcy court's jurisdiction if those claims had been brought by the Bank. We do not judge the accuracy of this statement, but note that it is such an intuition that led this Court to raise the question of jurisdiction <u>sua</u> <u>sponte</u>.

reimbursement from Stonebridge's bankruptcy estate. EOP's draw on the Letter of Credit triggered Stonebridge's contractual responsibility to reimburse the Bank for the draw on the Letter of Credit. Here, however, the Bank also sought damages against EOP for negligent misrepresentation. If the Bank is successful against EOP on its negligent misrepresentation claims, the need for reimbursement from Stonebridge's estate is alleviated.[3] This effect on the estate is not altered because the Trustee exchanged reimbursement to the Bank for an assignment of the Bank's negligent misrepresentation claims. The negligent misrepresentation claims therefore fall within the general bankruptcy jurisdiction.

Having decided that all four claims are within the general bankruptcy jurisdiction, we then must decide whether the claims are core or non-core. A proceeding is core "if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." Wood, 825 F.2d at 97. Again, this inquiry is relatively easy with respect to the breach of the Lease claims. Although the breach of the Lease claims are grounded in state contract law, the controlling questions for this case involve the

_____

[3] Similarly, other cases that involve litigation between third parties have been found to have an effect on the administration of the bankruptcy estate, including suits by creditors against guarantors and a suit by creditors of a debtor against defendants that allegedly perpetrated a fraud. See 3 COLLIER ON BANKRUPTCY ¶ 3.01 (15th ed. rev. 2005) (citations omitted).

interpretation of substantive rights provided by title 11, the § 502(b)(6) cap and lease rejection under § 365(a).

On the other hand, claims between third parties, such as the negligent misrepresentation claims, are typically considered within the bankruptcy court's non-core jurisdiction. In this case, however, the negligent misrepresentation claims are dependent upon the interpretation of rights created in bankruptcy, specifically those rights associated with § 502(b)(6) and § 365(a). Although the grafting of bankruptcy terms onto the interpretation of a Lease does not automatically result in core jurisdiction, as a practical matter, these particular negligent misrepresentation claims are substantively related to the interpretation of rights created in bankruptcy. In other words, the substantive rights asserted by the Trustee could arise only in the context of a bankruptcy case. Because these claims are dependent upon the rights created in bankruptcy and would not exist but for the filing of Stonebridge's bankruptcy, we find that these claims should be included within the bankruptcy court's core jurisdiction. See generally Northern Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982) (defining the limits of Article III jurisdiction of bankruptcy courts, later codified into core and non-core jurisdiction by Bankruptcy Amendments and Federal Judgeships Act of 1984, P.L. No. 98-353).

In sum, the bankruptcy court had core jurisdiction over all of the claims currently on appeal from the adversary proceeding under

28 U.S.C. § 1334 and § 157(b).  The district court had jurisdiction to review the bankruptcy court's order under 28 U.S.C. § 158(a). We then have jurisdiction to review this appeal under § 158(d), so we proceed to address the merits.

C

For ease of substantive analysis, we consider the causes of action alleged by the Trustee against EOP together (breach of the Lease and negligent misrepresentation[4]), but divide the claims into

---

[4] To present a claim of negligent misrepresentation, Stonebridge must prove:  (1) EOP made a representation in the course of business, or in a transaction in which EOP had a pecuniary interest; (2) EOP supplied false information for the guidance of the Bank in its business transactions; (3) EOP failed to exercise reasonable care or competence in obtaining or communicating this information; (4) the Bank justifiably relied on the representation; and (5) EOP's misrepresentation proximately caused the Bank pecuniary injury.  See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests, 991 S.W.2d 787, 791 (Tex. 1991).  The only disputed issue before us is whether EOP falsely represented to the Bank that the full amount of the Letter of Credit was "due and owing."  The inquiries undertaken to determine whether EOP falsely represented to the Bank and whether EOP breached the Lease are identical.

The parties do not raise the issue whether a tort action in the form of a negligent misrepresentation claim is available to the Bank, and thus to the Trustee as assignee of the Bank's claims, under these circumstances.  See generally In re Zamora, 274 B.R. 268, 274 (Bankr. W.D. Tex. 2002) ("With the Code's silence, the presumption is that the normal rules regarding the enforceability of valid assignments apply.").  Thus, this opinion does not decide whether such a claim is indeed available to issuers of letters of credit when a misrepresentation is made in connection with a draw upon a letter of credit and nothing in this opinion should be read to indicate that such a cause of action exists.  Because of the parties' failure to address the issue, however, we analyze the Trustee's negligent misrepresentation claim under the elements of the traditional tort action.

11

two groups: (1) the claims for draw/retention in excess of the § 502(b)(6) cap and (2) the claims for premature draw.

### 1

We first examine the claims against EOP for drawing against the Letter of Credit an amount in excess of the § 502(b)(6) cap.[5]

Section 502 of the Bankruptcy Code, entitled "Allowance of claims or interests", provides that claims or interests are deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). If an objection is made, the court determines the amount of such a claim and allows the claim in the determined amount, except to the extent that certain specified conditions exist. 11 U.S.C. § 502(b). Section 502(b)(6) provides:

> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that--
>
> > (6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds--
> > > (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of --

---

[5] Although mechanical differences may exist between drawing and retaining funds from a letter of credit, the application of § 502(b)(6) does not turn on these distinctions in this case. <u>See Eakin v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago</u>, 875 F.2d 114, 116 (7th Cir. 1989) ("Letters of credit are designed to avoid complex disputes about how much the beneficiaries 'really' owe. The promise and premise are 'pay now, argue later.'").

                    (i)  the date of the filing of
                         the petition; and
                    (ii) the  date  on  which  such
                         lessor   repossessed,   or
                         the  lessee  surrendered,
                         the leased property; plus
              (B)  any  unpaid  rent  due  under  such
                   lease, without acceleration, on the
                   earlier of such dates.

This limitation prevents a lessor who files a claim against the estate from reaping an unfair share of the bankruptcy estate over the remaining pool of unsecured creditors.  S. Rep. No. 95-989, reprinted in 1978 U.S.C.C.A.N. 5787, 5849; H.R. Rep. No. 95-595, reprinted in 1978 U.S.C.C.A.N. 5963, 6309 (the purpose of the statute is "to compensate the landlord for his loss while not permitting a claim so large (based on a long-term lease) as to prevent other general unsecured creditors from recovering a dividend of the estate.").

In this case, the Lessor's need to file a claim against the bankruptcy estate was obviated by the fact that the Lessee's obligations were substantially secured by cash and a letter of credit, to which the Lessor turned when the Lessee defaulted.[6]  The Lessor's draw on the letter of credit is the focus of the Trustee's arguments.  It is well-established in this circuit that letters of credit and the proceeds therefrom are not property of the debtor's bankruptcy estate.  Kellogg v. Blue Quail Energy, Inc. (In re

---

    [6]  The filing of a proof of claim serves no purpose if the creditor is secured or has not asserted a claim against the estate. See 4 COLLIER ON BANKRUPTCY ¶ 501.01[3][a] (15th ed. rev. 2005).

<u>Compton Corp.</u>), 831 F.2d 586, 589 (5th Cir. 1987).  Insofar as letters of credit embody obligations between the issuer and beneficiary, such contractual rights and duties are entirely separate from the debtor's estate:

> [A]n issuer's obligation to the letter of credit's beneficiary is <u>independent</u> from any obligation between the beneficiary and the issuer's customer.  All a beneficiary has to do to receive payment under a letter of credit is to show that it has performed all the duties required by the letter of credit.

<u>Id</u>. at 590 (emphasis added).  The structure of this relationship between the beneficiary (EOP), issuer (Bank), and issuer's customer (Stonebridge) is referred to as the "independence principle."

By its terms, § 502(b) applies only to claims against the bankruptcy estate.[7]  <u>See, e.g.</u>, <u>In re Ska! Design, Inc.</u>, 308 B.R. 777, 781 (Bankr. N.D. Tex. 2004) ("Section 502 deals only with

---

[7]  EOP first raised this argument in its reply brief in support of its motion for summary judgment in the bankruptcy court. <u>See</u> 4 R. at 678 ("In this case, EOP did not make a claim against the Debtor's estate.  The 502(b)(6) cap only applies for claims against the estate.  Thus, EOP did not have to take the cap into consideration in calculating its damages.").  In the district court proceedings, EOP specifically devoted an entire subsection of its brief to this argument.  <u>See</u> 1 R. at 47-48 ("When a creditor has a claim against a third party arising out of the actions of the debtor, or the creditor's relationship with a debtor, the creditor is not obligated to file a claim against the debtor's estate to pursue its remedy against a third party non-debtor.").  This argument was reiterated in the appellant's briefs to this court, which described this proposition as "axiomatic" to the application of § 502(b)(6).  Brief of Appellant at 33; <u>see also</u> Reply Brief of Appellant at 4-5.  Because the record clearly demonstrates that EOP adequately briefed and preserved this argument throughout the lower court proceedings, we find no compelling reason to deem it waived on this appeal.  <u>See</u> <u>Dial One of the Mid-South, Inc. v. BellSouth Telecomms., Inc.</u>, 401 F.3d 603, 607 (5th Cir. 2005).

allowance by a landlord of a claim, <u>if presented</u>, against the bankruptcy estate.") (quoting <u>In re Mr. Gatti's, Inc.</u>, 162 B.R. 1004 (Bankr. W.D. Tex. 1994) (emphasis added). Claims under § 502(b) are not automatically assumed simply because the debtor assumes or rejects a lease under § 365, but rather must be formally filed against the estate in the bankruptcy court. <u>See</u> <u>In re National Gypsum Co.</u>, 208 F.3d 498, 505 (5th Cir. 2000) (finding that the "opportunity" to file a proof of claim arises only "<u>subsequent to the debtor's decision on how to treat the contract or lease</u>"); <u>In re Austin Dev. Co.</u>, 19 F.3d 1077, 1085 (5th Cir. 1994) (finding that assumption or rejection of a lease simply entitles lessor to then file a proof of claim). Stated simply, the claim of a lessor against the assets of the estate is an essential precondition to applying the damages cap at all. <u>See</u> <u>In re Arden</u>, 176 F.3d 1226, 1229 (9th Cir. 1999) ([Section 502(b)(6)] has two predicates: 'claim of a lessor' and 'damages resulting from the termination of a lease or real property.'"). Thus, the damages cap of § 502(b)(6) does not apply to limit the beneficiary's entitlement to the proceeds of the letter of credit unless and until the lessor makes a claim against the estate.[8] We find, therefore, that further inquiry into the appropriate interpretation

---

[8] We also note that § 502(b)(6) does not apply to limit administrative expense claims made by the landlord based upon the continued use of the premises after the filing of the bankruptcy petition. <u>See</u> 4 COLLIER ON BANKRUPTCY ¶ 501.01[7][g] (15th ed. rev. 2005). Thus, this court will not imply a claim for lease-rejection damages in EOP's motion for administrative rent payments.

15

of § 502(b)(6) is unnecessary in this case because EOP did not file a claim against the estate.

Nonetheless, Stonebridge argues that the bankruptcy court reached the correct conclusion by limiting EOP to the capped amount.[9] Stonebridge asserts that the Letter of Credit is part of the Security Deposit under the Lease, thus bringing it within the purview of the § 502(b)(6) damages cap. In essence, Stonebridge argues that landlords may not offset actual damages against their security deposit and then claim for the balance under § 502(b)(6). Security deposits "will be applied in satisfaction of the claim that is allowed under [§ 502(b)(6)]." H.R. Rep. No. 95-595, at 353-55. To the extent that a landlord has a security deposit in excess of the amount of his claim under § 502(b)(6), Stonebridge asserts that the excess returns to the bankruptcy estate.

One problematic aspect of this argument is that it converts § 502(b)(6) into a self-effectuating avoiding power that would allow the trustee to bring an adversary proceeding against a lessor who exercises his rights under a letter of credit. This departs from the plain language of § 502(b)(6), which "allows only one thing--disallowance of the filed claim to the extent that it exceeds the statutory cap." Laura B. Bartell, <u>The Lease Cap and Letters of Credit: A Reply to Professor Dolan</u>, 120 BANKING L.J. 828,

---

[9] It is undisputed that EOP would have been limited to rejection damages from Stonebridge's estate of $1,353,032.02 under § 502(b)(6) if it had filed a claim against the estate.

835-36 (2003) ("Unlike preference law, there is no provision of the Bankruptcy Code that allows the trustee to sue a lessor for receiving property, even property of the estate, merely because it exceeds the lease cap of Section 502(b)(6)."). When the Bankruptcy Code intends to create an avoidance power, it does so expressly in the language of the provision. See, e.g., 11 U.S.C. § 547(b); see also Union Bank v. Wolas, 502 U.S. 151 (1991) (interpreting the scope of a trustee's avoidance powers provided under § 547). Stonebridge's argument draws an implicit analogy between the power of trustees to avoid certain preferential transfers for the benefit of the estate and the statutory cap imposed on a lessor's lease-rejection damages claim under § 502(b)(6) that simply cannot be squared with language in the Bankruptcy Code.

Moreover, Stonebridge relies on two cases from other circuits that have treated the proceeds of a letter of credit as a security deposit and capped by § 502(b)(6):  Solow v. PPI Enterprises, Inc. (In re PPI Enterprises, Inc.), 324 F.3d 197 (3d Cir. 2003), and Redback Networks, Inc. v. Mayan Networks Corp. (In re Mayan Networks Corp.), 306 B.R. 295 (B.A.P. 9th Cir. 2004).  In both cases, however, the landlord filed a claim against the bankruptcy estate seeking lease-rejection damages in excess of the amount of the security deposit.  Thus, the Trustee's reliance on these two cases is misplaced, because the record conclusively demonstrates that EOP never filed a proof of claim against the Stonebridge estate.

In sum, § 502(b)(6) does not alter the entitlement of EOP to the full proceeds of the Letter of Credit in the case where EOP has not also filed a claim against the estate for recovery of unpaid lease monies. The bankruptcy court's conclusion to the contrary was in error.

2

We next examine the claims against EOP for prematurely drawing against the Letter of Credit. The district court affirmed the bankruptcy court's holding that EOP breached the Lease and made negligent misrepresentations to the Bank by drawing down on the Letter of Credit prior to an event of default. The Lease provides:

> Landlord may, from time to time, without prejudice to any other remedy, use all or a portion of the Security Deposit to satisfy past due rent or to cure any uncured default by Tenant.

The Lease further defines the following as events of default:

> A. Tenant's failure to pay when due all or any portion of the Rent, if the failure continues for 5 days after written notice to Tenant ("Monetary Default").
> B. Tenant's failure (other than Monetary Default) to comply with any term, provision or covenant of this Lease, if the failure is not cured within 20 days after written notice to Tenant . . . .
> C. Tenant or any Guarantor becomes insolvent, makes a transfer in fraud of creditors or makes an assignment for the benefit of creditors, or admits in writing its inability to pay its debts when due. . . .

(a)

18

EOP asserts three separate reasons that it was entitled to the full proceeds of the Letter of Credit at the time of the draw. First, EOP argues that it did not prematurely draw down on the Letter of Credit because Stonebridge was in Monetary Default when EOP initiated the draw on the Letter of Credit. EOP contends that its motion to compel payment of unpaid post-petition rent filed seven days prior to EOP's initiation of the draw on the Letter of Credit (and served on Stonebridge's attorneys) provided written notice of Stonebridge's past due rent. Furthermore, Stonebridge acknowledged that it was in Monetary Default when it agreed that EOP was owed pre- and post-petition rent as of the rejection date. EOP contends that it was entitled to the proceeds of the Letter of Credit to cure Stonebridge's Monetary Default.

EOP also argues that it was entitled to the proceeds of the Letter of Credit because Stonebridge triggered the Insolvency Clause. Although 11 U.S.C. § 365(e)(1) prohibits the enforcement of such ipso facto clauses against the debtor, EOP argues that its ability to enforce its rights in the Lease against a third party letter of credit issuer is not affected by the Bankruptcy Code. Accordingly, at the time that the draw was initiated, EOP exercised its rights against the Bank under a current default and therefore did not prematurely draw on the Letter of Credit.

Finally, EOP maintains that it was entitled to the proceeds of the Letter of Credit as lease-rejection damages. EOP asserts that the bankruptcy court's November 8 entry of its nunc pro tunc order

19

approving rejection of the Lease effective as of October 1 makes EOP's draw on the Letter of Credit valid. Because the retroactive order set the effective date of rejection at October 1, the draw in late October, if in error, would have been cured.

On the other hand, Stonebridge asserts that EOP drew on the Letter of Credit prior to any event of default entitling EOP to the full amount of the Letter of Credit. Stonebridge argues: (1) that there were no Monetary Defaults under the Lease that entitled EOP to the full amount of the Letter of Credit; (2) that EOP was not entitled to draw on the Letter of Credit based on Stonebridge's insolvency under 11 U.S.C. § 365(e)(1); (3) that the bankruptcy court's November 8 order did not retroactively authorize EOP's draw on the Letter of Credit; and (4) that the language of the Lease did not give EOP the right to satisfy EOP's rejection damages with the proceeds of the Letter of Credit.

(b)

We have determined earlier that § 502(b)(6) was not triggered in this case and did not, therefore, cap damages payable under the Letter of Credit from the Bank to EOP. We now turn to the question of whether other factors limited damages that EOP could claim under the Letter of Credit. With the exception of the question of the timing of the lease rejection under § 365(a) (which is a question of interpreting the Bankruptcy Code and the orders issued therewith), the resolution of this question is a matter of interpreting the Lease. EOP's draw on the Letter of Credit must be

20

supported by some provision of the Lease that rightfully entitles EOP to represent to the Bank that such funds were "due and owing."

We conclude that EOP was entitled to draw on the Letter of Credit under the "Monetary Default" provision of the Lease. At the time of the draw, we have no doubt that Stonebridge was in Monetary Default under the terms of the Lease.[10] To the extent that the bankruptcy court held otherwise by stating that "Landlord EOP never provided notice of monetary or nonmonetary default to Stonebridge," In re Stonebridge Technologies, 291 B.R. at 72, the bankruptcy court's conclusions are incorrect. The Lease clearly provides that Stonebridge would be in Monetary Default if it failed to pay its rent when due or any portion of the rent and failed to cure within five days of written notice. EOP's motion for payment of rent was made on October 15, 2001, seven days before EOP actually drew on the Letter of Credit and provided sufficient written notice to Stonebridge that the Lease was in Monetary Default. See LA-Nevada Transit Co. v. Marathon Oil Co., 985 F.2d 797, 800 (5th Cir. 1993) (holding that a notice is effective if "sufficiently clear to

---

[10] During the bankruptcy court proceedings, Matthew Koritz, the litigation and government affairs counsel for EOP's general partner, testified that the determination of whether funds were "due and owing" under the Lease at the time of the draw was based upon Stonebridge's failure to pay portions of pre- and post-petition rent and intention to reject the Lease in full as part of its liquidation plan. 8 R. at 1511-12. Based on the formula provided in the acceleration clause of the Lease, EOP calculated its actual rejection damages under the Lease at approximately $1.5 to $1.6 million. 8 R. at 1478. Stonebridge does not dispute this figure.

apprise the other party of the action being taken"). Thus, the bankruptcy court clearly erred in finding that EOP never provided adequate notice of Monetary Default to trigger its right to draw upon the Letter of Credit.

Once the Lease was in Monetary Default, EOP became entitled to seek remedies, including drawing down all or a portion of the Security deposit, to cure that default under the terms of the Lease. The Lease also contains an acceleration clause under which

> Landlord may elect to receive as damages the sum of (a) all Rent accrued through the date of the termination of this Lease or Tenant's right to possession, and (b) an amount equal to the total Rent that Tenant would have been required to pay for the remainder of the Term discounted to present value at the Prime Rate . . . then in effect, minus the present fair rental value of the Premises for the remainder of the Term, similarly discounted, after deducting all anticipated Costs of Reletting.

This clause provides a measurement of lease rejection damages that the Lessor can utilize in the event of a default. In fact, the measure used to calculate accelerated damages under the Lease is the same measure that would be used to calculate the damage to a lessor from the rejection of a lease when not applying the § 502(b)(6) cap. See 11 U.S.C. § 502(g) ("A claim arising from the rejection . . . of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined . . . as if such claim had arisen before the date of the filing of the petition."); City Bank Farmers Trust Co. v. Irving Trust Co., 299 U.S. 433, 443 (1937) ("The amount of the landlord's claim for the

loss of his lease necessarily is the difference between the rental value of the remainder of the term and the rent reserved, both discounted to present worth."); Kimberly S. Winick, <u>Tenant Letters of Credit; Bankruptcy Issues for Landlords and Their Lenders</u>, 9 AM. BANKR. INST. L. REV. 733, 761 (2001) (noting that the terms of the lease agreement should be used to calculate damages when the statutory cap of § 502(b)(6) is not involved). Applying this formula in the instant case, EOP's accelerated damages under the Lease (estimated at between $1.5 and $1.6 million) exceeded the value of the Letter of Credit ($1,430,065.74).

We find, therefore, that the proceeds of the Letter of Credit were correctly applied to cover these accelerated damages. The Lease provides that EOP could use "all or a portion of the Security Deposit to satisfy past due Rent or to cure any uncured default by Tenant." The Letter of Credit, defined under the Lease as a portion of the Security Deposit, may therefore be used to satisfy past due rent or cure any uncured default. Because, in this case, those accelerated damages exceed the value of the proceeds of the Letter of Credit, EOP is entitled to the full proceeds of the Letter of Credit to cure the uncured Monetary Default.

Finally, we reject the Trustee's argument that the draw was premature based on the fact that the bankruptcy court did not issue its final order granting the administrative rent claims and setting the effective lease rejection date until November 8. First, we note that most courts have held that lease rejection may be

23

retroactively applied.  See In re Jamesway Corp., 179 B.R. 33, 37 (Bankr. S.D.N.Y. 1995) ("The majority of courts . . . have held that the effective date of rejection is the date of the bankruptcy court's order approving rejection, and that court approval is a condition precedent to effective rejection.").  Moreover, the parties' announcement in open court on October 23 clearly evinced Stonebridge's preference for an earlier effective rejection date, which ended up saving the estate over $200,000 in administrative rent expenses.  8 R. at 1480.  We are unwilling to allow Stonebridge to reap the benefits of the retroactive order without also recognizing that the earlier date effectively cured the prematurity of EOP's draw request on the Letter of Credit.  See Browning v. Navarro, 743 F.2d 1069, 1081 (5th Cir. 1984) (applying basic rules of contract interpretation to preserve the intended compromise reached by the parties under the terms of an agreement approved by the bankruptcy court).

Accordingly, EOP did not breach the Lease or negligently misrepresent to the Bank that sums were "due and owing" by drawing the full amount of the Letter of Credit.

III

Thus, we hold that the bankruptcy court has general and core jurisdiction over the claims for breach of the Lease and negligent misrepresentation brought by the Trustee.  Finding jurisdiction, we hold that § 502(b)(6) does not apply to cap the proceeds that EOP may claim against the Letter of Credit because EOP never filed a

24

claim for damages against the Stonebridge estate.  Further, we hold that the acceleration clause of the Lease permitted the draw on the proceeds of the Letter of Credit by EOP when Stonebridge defaulted on its rent payments.  Consequently, there was no breach of the Lease or misrepresentation to the Bank.

For the foregoing reasons, the judgment of the district court affirming the judgment of the bankruptcy court in this adversary proceeding is REVERSED, and the case is REMANDED to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED.