IN RE VOLUNTARY ASSIGNMENT FOR BENEFIT OF CREDITORS OF BOSSELL, VAN VECHTEN & CHAPMAN: CAPITOL INDEMNITY CORPORATION, Appellant, v. HOPPE, Trustee, Respondent.

*January 12—February 1, 1966.*

---

[3] Id. at page 480.

22

For the appellant there were briefs by *Arthur, Tomlinson & Gillman* of Madison, and oral argument by *Bruce Gillman*.

For the respondent there was a brief by *Hill, Miller & Quale* of Baraboo, and oral argument by *James H. Hill, Jr.*

HALLOWS, J.  We agree with the trial court this assignment is a security device and constitutes a chattel mortgage.  While assignments of contractors' tools and equipment under similar circumstances have been held to be valid they have not been sustained on the theory of an absolute transfer of property secret in nature.  Surety companies are not in the business of buying the assets of their customers.  In this state a deed, bill of sale or assignment given for security is not controlled by its form but is treated and considered, what in substance it is, a security device. *Rheingans v. Hepfler* (1943), 243 Wis. 126, 9 N. W. (2d) 585; *Holak v. Southard* (1924), 182 Wis. 494, 196 N. W. 769; *Manufacturers' Bank of Milwaukee v. Rugee* (1884), 59 Wis. 221, 18 N. W. 251.

The language of the assignment of the tools, plant, equipment, materials and subcontracts is not absolute in form and states the transfer is for the security of the company.[1]  Although the property is "hereby assign[ed], transfer[red] and convey[ed]" the conveyance is conditional and qualified upon subsequent events.  Upon breach by the contractor as therein defined the surety may take possession of the property, sell it and credit the proceeds upon any loss, damage or expense incurred by the surety under the bond.  The language "to be effective as of the date hereof, but only in the event of any breach," we construe in connection with the other language in the assignment to condition the conveyance for security

[1] "4th.  For the better protection of the Company, to assign, transfer and convey, and does hereby assign, transfer and convey to the Company, to be effective as of the date hereof, but only in the event of any breach, delay, or default on the part of the undersigned . . . ,

"(a) all right, title and interest of the undersigned in and to all tools, plant, equipment and materials of every nature and description that may now or hereafter be upon said work, or in, on or about the site thereof, including as well as materials purchased for or chargeable to said contract which may now be in the process of construction, or in storage elsewhere, or in transportation to said site, and

"(b) . . .

"(c) . . . and in the event of any breach, delay or default on the part of the undersigned in the performance of the contract covered by said bond or bonds, failure or inability of the undersigned to promptly pay, satisfy and discharge any and all obligations which might constitute possible claim under the bond or bonds or breach of any of the terms of the agreement, the undersigned hereby authorizes and empowers the Company, its authorized representatives, to enter upon and take possession of said tools, plant, equipment, materials and subcontracts, and to enforce, use and enjoy title thereto and possession thereof, and to sell the same as owner thereof, and agrees that all monies and the proceeds of payments and properties hereby assigned shall be the sole property of the Company, and to be by it credited upon any loss, damage and expense sustained or incurred by it under the said bond or bonds . . . ."

purposes. Substantially similar language in a surety-bond application was held by this court to be a chattel mortgage. *National Bank of Commerce v. Brogan* (1934), 214 Wis. 378, 253 N. W. 385; *Saint Louis Clay Products Co. v. Christopher* (1913), 152 Wis. 603, 140 N. W. 351. Other jurisdictions have held an assignment in form to secure a surety issuing its bond is in its nature a chattel mortgage. *Title Guaranty & Surety Co. v. Witmire* (6th Cir. 1912), 195 Fed. 41; *Hartford Accident & Indemnity Co. v. Coggin* (4th Cir. 1935), 78 Fed. (2d) 471.

However, we do not agree with the trial court that the filing of the chattel mortgage within four months of the assignment for the benefit of the creditors constituted a voidable preference under sec. 128.07, Stats. Ch. 128 was enacted in 1937 and in a large measure was copied from or based upon the National Bankruptcy Act as it then read or as it was originally created in 1898. We pointed out in *In re Adams Machinery, Inc.* (1963), 20 Wis. (2d) 607, 123 N. W. (2d) 558, that sec. 128.19 (1) (b) was identical with and derived from sec. 70a (5) of the Bankruptcy Act of 1898, and it was the settled rule in the construction of statutes when a statute is adopted from another state the adoption also carried the existing judicial construction of the statute. *Estate of Sweet* (1955), 270 Wis. 256, 258, 70 N. W. (2d) 645; *Estate of Bullen* (1910), 143 Wis. 512, 520, 128 N. W. 109. Specifically it was stated the rule was applicable to a federal statute which had been construed by the United States supreme court.

Although sec. 128.07 (1) and (2), Stats.,[2] was enacted by ch. 431, Laws of 1937, and was modeled after sec. 60 (a) and (b) of the Bankruptcy Act, it did not adopt

---

[2] "128.07 PREFFERED CREDITORS. (1) A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against him in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable

the language of that section as it stood in 1937 but rather the language of that section as it existed in the Bankruptcy Act of 1898 unaffected by the amendments thereto of 1903, 1910, and 1926. No definition of "transfer" is provided in sec. 128.07 or in the rest of the chapter applicable to preferences. Consequently, whether the filing of a chattel mortgage within four months of an assignment for the benefit of creditors is a transfer depends upon the construction given by the supreme court to the Bankruptcy Act, sec. 60 (a) and (b), as it existed in 1898.

Originally, sec. 60 of the Bankruptcy Act of 1898 by sub. (a) defined a preference and by sub. (b) provided what preferences were voidable and contained nothing whatsoever about secret or unrecorded or unfiled transfers. If a transfer was made four months or more before bankruptcy, it was not void as a preference regardless of how preferential it was and regardless whether it was not recorded or filed as contemplated by state law until within four months of the bankruptcy. 4 Remington, Bankruptcy (rev. ed.), pp. 298, 299, sec. 1696. This was not a satisfactory result and as Remington points out attempts were made to define "transfer" in terms of filing and recording. By amendment of 1903, sub. (a) of sec. 60 was changed to provide that where "the preference consists in a transfer, such period of four months shall not

---

any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class.

"(2) If the debtor shall have given a preference within four months before the filing of a petition, or an assignment, or after the filing of the petition and before the appointment of a receiver, or after the filing of an assignment and before the qualification of the assignee, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the receiver or assignee, and he may recover the property or its value from such person."

expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required." In 1910 the requirement in respect to recording was added to sub. (b) but there was considerable conflict in the cases of what constituted "required" by state law. In 1926 the phrase "or permitted" was added after the word "required" and sec. 60 was in that form but was not followed at the time sec. 128.07, Stats., was adopted. On the problem of the effect of delay in filing and "perfecting a transfer" within four months of the bankruptcy, see 9 Am. Jur. (2d), Bankruptcy, p. 754, sec. 1005, and p. 798, sec. 1074.

If our assignment law had adopted sec. 60 as it was then worded, a chattel mortgage antedating the four-months period but filed within the four months would be held to be a preference as against the assignee for the benefit of creditors. Likewise, there is no doubt that with the amendments to sec. 60 of the National Bankruptcy Act in 1938 and in 1950 if the contractor had gone into bankruptcy rather than making the assignment for the benefit of creditors, the chattel mortgage of the surety being filed within the four months would have been found to be a voidable preference as against the trustee in bankruptcy. 4 Remington, Bankruptcy (rev. ed.), p. 298 *et seq.*, secs. 1696 and 1697.

A chattel mortgage, unlike a conditional sales contract, is not required by sec. 241.08, Stats., to be filed within any period of time. See sec. 122.05 for requirements for the filing of a conditional sales contract within ten days of its execution. A chattel mortgage which is not filed or when possession of the mortgaged property is not taken by the mortgagee, nevertheless, is valid between the parties; but until the filing requirements of sec. 241.10 are met such mortgage is not valid against other persons who are without notice. The effect of filing a chattel mortgage is stated in sec. 241.10 (3) to be "Mortgages so filed shall be valid and binding upon all persons as if

the property thereby mortgaged had been, immediately upon the execution of such mortgages, delivered to, and the possession thereof retained by, the mortgagees."

Consequently, the property was transferred by the contractor within the meaning of sec. 128.07, Stats., at the time of the execution of the application in 1962. The contractor had no control over the filing and did nothing when the mortgagee filed the mortgage. The perfecting of the transfer by the mortgagee against other persons by filing is not a transfer. Since no creditor acquired any rights in respect to the property prior to the filing of the chattel mortgage and the assignee for the benefit of the creditors did not acquire his rights under sec. 128.19 (1) until the date of the filing of the assignment, the chattel mortgage is valid against the assignee. However, had the chattel mortgage not been filed, the assignee would have been entitled to the property under sec. 128.19 (1) (b) as property which might have been levied upon and sold under judicial process by a creditor. *In re Adams Machinery, Inc., supra.*

Unfortunately, the result of this case is one example of the inadequacy of our insolvency law in comparison with the National Bankruptcy Act. Other disadvantages are pointed out in *In re Wisconsin Builders Supply Co.* (7th Cir. 1956), 239 Fed. (2d) 649. The creditors of the contractor could have secured the protection and the benefit of the National Bankruptcy Act had they petitioned the court for an adjudication of the contractor as a bankrupt on the ground the assignment for the benefit of creditors was an act of bankruptcy. Bankruptcy Act, sec. 3 (a) (4), 11 USCA, sec. 21 (a) (4).

Reference was made in the oral argument to the fact the surety did not file the chattel mortgage but only a notice thereof which is not in compliance with the filing statute. Sec. 241.10, Stats., requires either the filing of the original chattel mortgage, a duplicate original, or a

copy thereof certified as true and correct by the holder thereof. The surety filed an instrument in which it certified and set forth verbatim that part of the application which we have construed to be a chattel mortgage, together with the names, dates, and a detailed list of the property covered by the transfer. The trial court did not pass on the sufficiency of the filing and the record discloses no objection on that ground. Neither is the question briefed; consequently, the question is not before us.

The assignee at the trial requested the court for a hearing on factual matters. The chattel mortgage did not purport to transfer to the surety all the property of the contractor but, so far as this case is concerned, only the tools, plant, equipment and materials which were then or may thereafter be upon the work or in or about the site thereof. Certainly this language contemplates no more than the tools and equipment which were used in the fulfilment of the contract. The record does not disclose whether the property sold consisted only of the property covered by the chattel mortgage or whether it included other property. We think the surety is required to make proof of its claim that the proceeds represent property covered by its mortgage.

Finally, the assignee argues the assignment given to the surety was fraudulent and void under sec. 241.05, Stats., and under secs. 242.04, 242.05 and 242.08 of the Uniform Fraudulent Conveyance Act. In respect to sec. 241.05 that section has no application since we do not construe the assignment as an absolute transfer of title but as a chattel mortgage governed by sec. 241.08. The common element in the three sections of the Uniform Fraudulent Conveyance Act is lack of a fair consideration for the transfer. The contractor as principal of the performance bond impliedly promised to indemnify its surety. To secure such promise, the transfer of property as security was made. The issuance of the surety bond whereby the surety became bound for the performance

of the contractor on the highway contracts is a fair and adequate consideration for the security. *Maryland Casualty Co. v. Hjorth* (1925), 187 Wis. 270, 202 N. W. 665. The sections of the Uniform Fraudulent Conveyance Act are not applicable to the facts here presented.

*By the Court.*—The order is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

HEFFERNAN, J., took no part.