In re FARM FRESH SUPERMAR-
KETS OF MARYLAND, INC.,
et al., Debtors.

Terry L. Musika, Chapter
7, Trustee, Plaintiff,

v.

Arbutus Shopping Center Limited
Partnership ASCLP c/o AMCAP,
Inc., Defendant.

Bankruptcy Nos. 95–5–8431–
JS, 95–5–8441–JS.
Adversary No. 98–5770–JS.

United States Bankruptcy Court,
D. Maryland,
at Baltimore.

Jan. 12, 2001.

Richard A. Goldberg, Shapiro, Sher and Guinot, Baltimore, MD, for Plaintiff.

Joyce A. Kuhns, Saul, Ewing, Weinberg & Green, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION
## DISMISSING COMPLAINT

JAMES F. SCHNEIDER, Bankruptcy Judge.

On Friday, November 17, 1995, an involuntary Chapter 7 bankruptcy petition was filed in this Court against the debtor, Farm Fresh Supermarkets of Maryland, Inc. ("Farm Fresh"). On the same day, the appointment of an interim trustee was authorized by this Court and Terry L. Musika was appointed to that position by the United States Trustee. On Sunday, November 19, 1995, Beckenheimer's, Inc., a wholly-owned subsidiary of Farm Fresh, filed a voluntary Chapter 7 petition in Case No. 95–5–8441 on an emergency basis at the home of the undersigned bankruptcy judge. On that occasion, Mr. Musika was appointed interim trustee in that case as well. On the same day, this Court approved Mr. Musika's motion that the two cases be jointly administered, Farm Fresh having consented to adjudication as a Chapter 7 debtor. Thereafter, the United States Trustee appointed Mr. Musika as Chapter 7 trustee in both cases. On April 28, 1998, the trustee filed the instant complaint for avoidance of a postpetition transfer, turnover and other relief, against Arbutus Shopping Center Limited Partnership ("Arbutus" and/or "landlord"), the landlord of one of the debtor's stores. For the following reasons, the instant complaint will be dismissed.

## FINDINGS OF FACT

Arbutus leased certain real property to Farm Fresh pursuant to a lease dated July 15, 1956. Pursuant to Section 11 of the lease amendment dated September 1, 1981, as set forth in the second amendment to the lease dated January 26, 1984, an irrevocable standby letter of credit was posted for the benefit of the landlord in the amount of $38,000, which the landlord was entitled to draw upon in the event of the debtor's default under the lease. The letter of credit was issued by Signet Bank and was automatically renewable from year to year unless canceled.

On the date of the filing of the involuntary petition, Farm Fresh was advised by the landlord's agent that it had committed monetary and nonmonetary defaults under the lease. The debtor's check for the November, 1995, rent payment in the amount of $13,044.15, had been returned for "insufficient funds."

By letter dated December 1, 1995, the trustee warned the landlord that the letter of credit was property of the estate and that a "draw-down" of its proceeds would constitute a violation of the automatic stay.

After making proper demand upon the debtor for the cure of defaults under the lease, Arbutus notified Signet Bank of the default by letter dated December 7, 1995, and drew down the entire $38,000 under the standby letter of credit by check issued by Signet on December 14, 1995.

On January 3, 1996, the trustee filed a motion to sell and assign virtually all of the debtors' property, including the lease at issue here, to Richfood Holdings free and clear of all liens, claims and encumbrances. Arbutus filed an objection to the motion on a variety of grounds, including the allegation that the lease could not be assumed and assigned until the trustee cured past due arrearages for the nonpayment of rent. The objection was later withdrawn and the sale motion was approved by this Court. The sale was consummated, with settlement occurring on February 16, 1996. On February 22, 1996, the trustee paid to Arbutus the sum of $13,044.15, representing one month's rent which was required to cure postpetition defaults in order to have the executory lease assumed by the trustee and assigned to Richfood. The payment was made notwithstanding the fact that the landlord had already drawn down the $38,000 under the standby letter of credit. Nearly one year later, on January 24, 1997, the trustee demanded that Arbutus pay him the sum of $13,044.15, the amount of the cure payment made by the trustee to the landlord.

After the demand was refused, this suit was filed which sought turnover of the

$13,044.15 paid by the trustee as property of the estate, turnover of the $38,000 from the letter of credit as unjust enrichment, and the avoidance of the payment of he $13,044.15 as an unauthorized postpetition transfer.

## CONCLUSIONS OF LAW

The trustee may not recover either the $38,000 drawn down under the letter of credit or the $13,044.15 paid as a cure payment to the landlord. The trustee properly assumed and assigned the lease on behalf of the estate, and with that assumption and assignment went all the rights and obligations that came with the lease. Having obtained the approval of this Court for the assumption and assignment of the lease, the trustee cannot now recover either the amount that the trustee paid to cure the defaulted rent or the amount that was paid to the landlord by Signet under the standby letter of credit when the debtor failed to cure the defaults after timely demand was made by the landlord.

The complaint involves a standby letter of credit which is a distinct type of financing document that is more akin to a guarantee than to the usual letter of credit. See Christopher Leon, *Letters of Credit: A Primer*, 45 Md.L.Rev. 432, 442–43 (1986). The letter of credit at issue is a tripartite agreement that gave the landlord upon demand the right to obtain payment from a third party for which the debtor may be ultimately liable, but which the trustee cannot recover. The landlord did not reap a windfall when the letter of credit was paid or when the cure payment was made because the failure to pay rent is not the only event upon which the letter of credit could be drawn down. Whether or not the nonmonetary defaults under the lease were significant events is irrelevant because the lease and the letter of credit permitted the funds to be drawn down in the event of nonmonetary defaults.

■ The proceeds of the letter of credit were properly drawn down by Arbutus pursuant to the terms of the lease and the letter of credit. This opinion holds that neither the letter of credit nor its proceeds were property of the debtor's estate, and therefore the trustee may not maintain the instant lawsuit to recover them. *See Willis v. Celotex Corporation*, 978 F.2d 146 (4th Cir.1992) (Automatic stay did not apply to an irrevocable letter of credit issued by bank to debtor's surety, and because the letter of credit was not property of the estate, the surety could draw down on the letter of credit in the event of the debtor's default on a *supersedeas* bond posted by the surety on the debtor's behalf without violating the automatic stay.).

Were the trustee entitled to recover on this cause of action, he would be able to overturn court-approved sales of estate assets or at least disavow selected provisions of sale agreements that he might, upon further reflection, determine to have been improvident. It is now too late to do so.

The payment under the letter of credit was not a postpetition transfer that required court approval. This is because "property of the estate does not include the proceeds of a letter of credit paid to a creditor of the debtor who is a beneficiary of the letter." 5 Collier on Bankruptcy ¶ 549.04[1] (15th ed. rev.2000), *citing In re Page*, 18 B.R. 713 (D.D.C.1982); *In re Originala Petroleum Corp.*, 39 B.R. 1003 (Bankr.N.D.Tex.1984). Because the proceeds are not property of the estate, they do not constitute a postpetition transfer avoidable by the trustee pursuant to Section 549 of the Bankruptcy Code.

One of the purposes of this letter of credit and all such letters of credit is to assure prompt payment to the beneficiary, in this case, the landlord, in the event of defaults. It was more of a guarantee than a regular letter of credit which is typically issued in sales of goods. See *American National Bank and Trust Company of Chicago v. Hamilton Ind. International, Inc.*, 583 F.Supp. 164 (N.D.Ill.1984); *Consolidated Aluminum Corp. v. Bank of Virginia*, 544 F.Supp. 386 (D.Md.1982), *aff'd*, 704 F.2d 136 (4th Cir.1983).

■ Likewise, the postpetition cure payment tendered by the trustee was not

an unauthorized postpetition transfer because it was authorized by the Court pursuant to 11 U.S.C. § 365.

As counsel to the trustee conceded, the sale of substantially all of the debtor's assets, including the assumption and assignment of this lease, was a major transaction in terms of the bankruptcy estate. The amount of the cure payment and the proceeds from the letter of credit were minuscule compared to the benefit obtained by the estate from the sale. The letter of credit is a side issue in a side agreement and is now being held as a security deposit on behalf of the assignee which is a benefit to the debtor's estate by reason of the fact that it permitted the sale to be approved and consummated in a timely fashion without further costly litigation, including possible appeals. That the landlord withdrew its objection to the sale benefitted the trustee's speedy liquidation of the estate. If this action had been brought before the proceeds of the letter of credit had been drawn down, this Court would not have enjoined it based upon established legal precedent. *See Willis*, 978 F.2d 146 (4th Cir.1992).

The opinion of the Sixth Circuit in the case of *Demczyk v. Mutual Life Insurance Company of New York (In re Graham Square, Inc.)*, 126 F.3d 823 (6th Cir.1997), cited by the trustee, presents a different issue from the one involved here. In *Graham Square*, the trustee did not challenge the "draw down" of the standby letter of credit, but rather was suing on the underlying contract between the debtor as buyer and the defendant as seller, in order to recover a loan commitment fee. The court allowed the suit to be maintained, even though the letter of credit had been used to pay the commitment fee to the seller. The court said that while the result might be the same, namely the recovery of the money paid under the letter of credit, the suit was based not on the wrongful "draw down" from the letter of credit, but rather represented the plaintiff's challenge to an unreasonable liquidated damage clause in the underlying contract. The court held that the commitment fee was reasonable as representing liquidated damages. In reversing the district court's holding that proceeds of the letter of credit were not property of the estate, the Sixth Circuit did not hold that the proceeds *were* property of the estate, but that the estate's interest in the trustee's cause of action brought on the underlying contract *was* property of the estate under the broad umbrella of 11 U.S.C. § 541(a).

■ In the instant case, the underlying contract was assumed and assigned and the trustee now cannot go back and claim that he has any further interest in it. The result is the same as if the estate has abandoned the cause of action and the trustee has no further standing to raise the issue.

WHEREFORE the instant complaint will be dismissed.

ORDER ACCORDINGLY.